In re VALHOFF.

(District Court, S. D. California, S. D.   November 23, 1916.)

1. ALIENS ☞68—NATURALIZATION—DECLARATION OF INTENTION—STATUTES—"SUCH DECLARATION."

The first paragraph of Naturalization Act June 29, 1906, c. 3592, § 4, 34 Stat. 596 (Comp. St. 1913, § 4352), requires an applicant to declare his intention to become a citizen, and that such declaration shall set forth certain facts, provided that no alien, who, in conformity with the law in force at the date of his declaration, had declared his intention, need renew such declaration. The second paragraph provides that, not less than two years nor more than seven years after he has made such declaration of intention, he shall petition for naturalization. The proviso at the end of the first paragraph was added by amendment to the act as originally introduced for the stated purpose of avoiding injustice to those who had already made declarations and acquired rights thereunder. It was construed, at the time and since, by the Naturalization Bureau and by most of the courts, as not requiring a new declaration, where one had been made under the old law, even if more than seven years had elapsed since the enactment of the new law. Numerous certificates of naturalization had been granted, which would be subject to attack by the district attorneys under section 15 of the act (Comp. St. 1913, § 4374), if such construction were overthrown. Held, that the words "such declaration," in the second paragraph, referred only to a declaration filed under that act, and one who had filed a valid declaration under the old law could be naturalized without a new declaration, though more than seven years had elapsed since the new act took effect.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 138–145; Dec. Dig. ☞68.]

2. STATUTES ☞217—CONSTRUCTION—HISTORY OF ENACTMENT.

The history of a statute from its introduction to its passage, the reports of committees, the amendments, and the opposition made to its passage in its various forms are legitimate aids to its construction.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 293; Dec. Dig. ☞217.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. STATUTES ⬅219—CONSTRUCTION—CONTEMPORANEOUS CONSTRUCTION BY ADMINISTRATORS.

The contemporaneous and practical construction of a statute by those whose duty it is to carry it into effect, though not absolutely controlling, is entitled to great respect in court, since it is usually made by able men, masters of the subject, and frequently the draftsmen of the statute.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 296, 297; Dec. Dig. ⬅219.]

Application by Hjalmar Aage Valhoff for naturalization. Petition granted.

TRIPPET, District Judge. The petitioner here made a declaration of intention to become a citizen on the 31st day of October, 1904. He filed his petition to become a citizen on the 31st day of January, 1916. More than seven years had elapsed after his declaration of intention before the application was filed. He made his declaration, as will be seen, prior to the passage of the act of June 29, 1906, and the question of the validity of such declaration under this act is the question at issue. This question was carefully considered in U. S. v. Lengyel, 220 Fed. 720, by Judge Orr of the Western District of Pennsylvania. In that opinion the material parts of the act are set out, and the reasoning to justify the conclusions of the court that the act did not affect declarations made prior thereto, seems unanswerable. Yet there are other reasons why such a declaration is valid.

[1] In order to understand what is here said, it is necessary to quote a part of the act, to wit:

"Sec. 4. That an alien may be admitted to become a citizen of the United States in the following manner and not otherwise:

"First. He shall declare on oath before the clerk of any court authorized by this act to naturalize aliens, or his authorized deputy, in the district in which such alien resides, two years at least prior to his admission, and after he has reached the age of eighteen years, that it is bona fide his intention to become a citizen of the United States, and to renounce forever all allegiance and fidelity to any foreign prince, potentate, state, or sovereignty, and particularly, by name, to the prince, potentate, state, or sovereignty of which the alien may be at the time a citizen or subject. And *such declaration* shall set forth the name, age, occupation, personal description, place of birth, last foreign residence and allegiance, the date of arrival, the name of the vessel, if any, in which he came to the United States, and the present place of residence in the United States of said alien: Provided, however, that no alien who, in conformity with the law in force at the date of his declaration, has declared his intention to become a citizen of the United States shall be required to renew such declaration.

"Second. Not less than two years nor more than seven years after he has made *such declaration* of intention he shall make and file, in duplicate, a petition in writing, signed by the applicant in his own handwriting and duly verified, in which petition such applicant shall state his full name, his place of residence (by street and number if possible), his occupation, and, if possible, the date and place of his birth; the place from which he emigrated, and the date and place of his arrival in the United States, and, if he entered through a port, the name of the vessel on which he arrived; the time when, and the place and name of the court where he declared his intention to become a citizen of the United States; if he is married he shall state the name of his wife, and, if possible, the country of her nativity and her place of residence at the time of filing his petition; and if he has children, the name, date, and place

of birth and place of residence of each child living at the time of the filing of his petition: Provided, that if he has filed his declaration before the passage of this act he shall not be required to sign the petition in his own handwriting."

The declaration required by the first paragraph above quoted is quite different from the declaration required by law before the adoption of this act. Revised Statutes 1878, § 2165. The phrase "such declaration," as first used in the first paragraph of section 4, must necessarily refer to the declaration previously mentioned. No one could, with reason, contend that it referred to a declaration made under the previous statute. In the second paragraph of section 4, above quoted, the same phrase, "such declaration," is used, and this phrase necessarily refers to the same declaration to which the phrase in the body of the first paragraph refers. It does not seem possible to construe the language to relate to a declaration made previously to the passage of the act. This will appear clearly when the history of the act, hereinafter referred to, is considered. The proviso in paragraph First of section 4, was inserted by amendment. That being so, it must necessarily follow that in the original draft of the bill the word "such" in the second paragraph referred to the new form of declaration contained in the bill.

Coming now to the first part of the second paragraph, which is the language to be construed, it will be noted that the 7 years' limitation commences to run "after he has made such declaration." It does not read, "after the passage of the act," nor "after it went into force." Those who claim that this sentence has relation to declarations made prior to the passage of the act, but did not affect such declarations until the act had been in force for 7 years, must necessarily contend that the sentence should be read as follows:

Not less than two years nor more than seven years after the passage of this act, he shall make and file, in duplicate, a petition in writing, etc.

If this act applied to declarations made prior to the passage of the act, then it cut off all rights existing under such declaration where the same was 7 years old at the time the act went into force. The act, therefore, would only give to holders of such declarations 90 days after its passage within which to file an application, for the act went into force 90 days after its passage.

It was early held—to wit, December 3, 1907—that the act did not relate to declarations made prior to the passage thereof. In re Wehrli (D. C.) 157 Fed. 938. No decision has been called to the attention of the court wherein it was held, prior to September 27, 1913, that this act related to declarations made prior to the passage of the act. It is true that in the case above cited the court made the suggestion that those who had made their declarations prior to the passage of the act "must make their final application within seven years from the enactment of the act," but this statement of the court is obiter dictum. The question could not possibly have been before the court for consideration.

[2] The history of a statute, from the time it was introduced until it was finally passed, may afford some aid to its construction. The re-

ports of committees, the introduction of amendments, and the opposition made to the passage of a statute in its various forms, are legitimate aids to its construction. 11 Ency. of U. S. Sup. Ct. Rep. 143, and authorities there cited. The bill for the act was introduced and was referred to a committee without the provisions hereafter referred to and which appear as provisos in sections 4 and 8 (Comp. St. 1913, §§ 4352, 4364). The committee having the bill in charge reported the following amendments thereto:

"Provided, however, that no alien who, in conformity with the law in force at the date of his declaration, has declared his intention to become a citizen of the United States shall be required to renew such declaration.

"Provided, that if he has filed his declaration before the passage of this act, he shall not be required to sign the petition in his own handwriting.

"And provided further, that the requirements of this section shall not apply to any alien who has prior to the passage of this act declared his intention to become a citizen of the United States in conformity with the law in force at the date of making such declaration."

At page 110 of the Appendix, vol. 40, part 10, 59th Cong. 1st Sess., Representative Steenerson, speaking upon the bill, and with reference to said four amendments, and to their effect upon the bill, said, concerning the injustice of the bill without the amendments:

"Such a result was so shockingly unjust that the committee finally agreed to so amend the bill as to make it apply only to persons who shall hereafter declare their intention to become citizens. This, however, in my opinion, does not go far enough, for this so-called 'literary test' should not apply to any who take up homesteads upon the public domain."

A further amendment was offered upon the floor by Representative Wharton, of Illinois, as follows:

"That no alien shall hereafter be naturalized or admitted as a citizen of the United States who cannot read, write, speak and understand his own or the English language: Provided, that this requirement shall not apply to aliens who are physically unable to comply therewith, if they are otherwise qualified to become citizens of the United States."

The last above proposed amendment resulted in the adoption of section 8, in the following form:

"Sec. 8. That no alien shall hereafter be naturalized or admitted as a citizen of the United States who cannot speak the English language: Provided, that this requirement shall not apply to aliens who are physically unable to comply therewith, if they are otherwise qualified to become citizens of the United States: *And provided further, that the requirements of this section shall not apply to any alien who has prior to the passage of this act declared his intention to become a citizen of the United States in conformity with the law in force at the date of making such declaration: Provided further, that the requirements of section 8 shall not apply to aliens who shall hereafter declare their intention to become citizens and who shall make homestead entries upon the public lands of the United States and comply in all respects with the laws providing for homestead entries on such lands.*"

The foregoing history of the bill in its progress through Congress certainly tends to show that Congress never intended it to affect declarations made prior to the passage thereof.

[3] The contemporaneous and practical construction of a statute by

those whose duty it is to carry it into effect is entitled to great respect in the court. Though not absolutely controlling, it is not to be disregarded without the most cogent and persuasive reasons, for the reasons that it is usually construed by able men, masters of the subject, and frequently the draftsmen of the statute, that such construction goes a long way to prove that there is some plausible ground or reason for it in the law, or in the historical facts which have imposed a particular construction of the law favorable to such usage, and that such construction has received the implied sanction of Congress in its not passing an act abrogating the construction. 11 Ency. of Sup. Ct. Rep. 138, and the abundant authorities therein cited.

The act created a Bureau of Immigration and Naturalization in the Department of Commerce and Labor. (This was subsequently divided, making a Bureau of Naturalization and a Bureau of Immigration.) The Bureau of Immigration and Naturalization adopted, soon after its creation, regulations which were a construction of the act concerning declarations made prior to the passage of the act. In these regulations the act was interpreted so as not to require a person, who had declared his intention in conformity with the law in force at the date of his declaration, to renew such declaration, notwithstanding the declaration was 7 years old. The courts throughout the country admitted persons to citizenship who had made declarations more than 7 years prior to the passage of the act. Apparently the courts were of the unanimous opinion that such was the proper construction of the act until the act had been in force for a period of 7 years and longer.

On August 20, 1913, at a time immediately prior to the act having been in force for a period of 7 years, and for the guidance of its officers after September 27, 1913, the Bureau of Naturalization issued naturalization regulations in which it was again recognized that any alien who, prior to September 27, 1906, had declared his intention in conformity with the law in force at that date, should not be required to renew such declaration. In harmony with these instructions and interpretations of the Bureau, the courts throughout the country admitted persons to citizenship, without any decision to the contrary, until January 26, 1914. In re Yunghauss (D. C.) 210 Fed. 545.

Notwithstanding such decision by the District Court for the Southern District of New York, in which all the judges of the district concurred, the Bureau of Naturalization, on December 19, 1914, in harmony with its previous interpretation of the law, issued the following instructions, to wit:

"2. Any alien who prior to September 27, 1906, has declared his intention in conformity with the law in force at the date of his declaration, shall not be required to renew such declaration.

"3. Aliens who lawfully declared their intention on and after June 29, 1906, and prior to September 27, 1906, must comply with all of the requirements of the naturalization act of June 29, 1906, in petitioning for naturalization, with the exception that those arriving prior to June 29, 1906, are not required to furnish certificates of arrival.

"Aliens who declared their intention prior to June 29, 1906, in accordance with the requirements of law, must comply with all of the requirements of the naturalization act of June 29, 1906, in petitioning for naturalization, except that they will not be required to file certificates of arrival, sign their petitions in their own handwriting, or to speak the English language."

The Bureau of Naturalization furnishes the court the following statement:

"In compliance with your request there is inclosed herewith a list of the courts in which the question of naturalization on an old-law declaration has been considered. This is taken from the records of the Bureau, and shows that 139 courts have admitted aliens upon old-law declarations,' and that 30 courts have declined to admit them. It also shows that, notwithstanding the decision of the United States Circuit Court of Appeals for the Second Circuit, in the case of Yunghauss v. U. S., 218 Fed. 168 [134 C. C. A. 67], the federal court at Buffalo is bound by the letter of the decision, but not by the spirit, in that it will not dismiss petitions pending in the court because based upon old-law declarations, but permits the candidates to withdraw their declarations and take them over to the Supreme Court of New York state, in that city, where they are filed in support of petitions and favorably considered. In addition to this the various state courts of New York are continuing to admit candidates for citizenship, notwithstanding the action of the Second Circuit."

The fact that 139 courts have admitted aliens upon old-law declarations, as against 30 that have declined to admit them, is interesting, if not instructive. This is a country of laws, where every man's act is sustained or controlled by a law, and every man is presumed to know the law. It is unfortunate, therefore, that it is so difficult to determine what the law is. While not saying that the action of a majority of courts on a subject should be authority concerning what the law is, we may note that the gravest questions of law are sometimes determined by a vote of five judges to four, or four judges to three, or three judges to two. Then why is not an interpretation placed upon a statute by a majority of courts a reason for giving it a certain construction? The Bureau of Naturalization informs the court that since the 27th of September, 1913, the date when the 7-year limitation on declarations made prior to the passage of the act, had fully run, there have been filed in the courts of Los Angeles 392 petitions based upon old-law declarations, and such applicants admitted to citizenship, and in the Southern District of California, outside of Los Angeles county, there have been, approximately, 300 of such petitions granted. The Bureau also informs the court that throughout the United States there have been thousands and thousands of persons admitted to citizenship by virtue of these old-law declarations since said date.

By virtue of section 15 of the act, the United States district attorney, in any district, can maintain a suit to cancel a certificate of citizenship where such certificate was illegally procured. The order of the court admitting an alien to citizenship is not a final adjudication. It may be attacked by the United States district attorney, under section 15. It therefore results that the tenure of citizenship of all persons within this district, admitted as above, and all the thousands of people throughout the United States, so admitted, depends upon what the United States attorneys may do. Congress certainly never intended that the right to be a citizen should be so precarious. To place all these people in a status whereby their citizenship might be revoked at any time would surely be keeping the word of promise to the ear and breaking it to the hope. This court cannot give its assent to any such interpretation of the law, except in obedience to the opinion of a higher court.

BLEDSOE, District Judge. I concur. The language of paragraph 1 of section 4, to the effect that an alien making a "declaration" under the old law shall not "be required to *renew such declaration*" means, if words mean anything, that he shall not be required to renew—i. e., make *anew*—*any* declaration for the purpose of petitioning for·citizenship; in other words, that the declaration already made by him shall be sufficient in form whenever he chooses to petition. Careful search of subsequent provisions in the Naturalization Law fails to reveal to my mind any language inconsistent with, or contrary to, this plain, unambiguous, and specific direction of Congress. In view of its presence in the act, general words of limitation must be held to apply only to declarations made after the passage of the act.